JOSEPH STEWART *et al, vs.* JAMES IGLEHART.—*June* 1835.

S and R fraudulently united to induce the wife of S, to join in a conveyance of her lands, for the purpose of securing them from the creditors of S, and defrauding the wife. After this, R having the legal title, mortgaged the lands to I, who knew that the deed from S and wife, to R, was intended to be impeached. Upon a bill filed by the creditor I, against S and R, and the heirs at law of the wife, who was dead, to sell the land for the payment of the mortgaged debt. The bill was dismissed as against all the defendants, except S and R, whose interests were decreed to be sold.

A deed made with intent to defraud creditors, is void under the statute of *Elizabeth,* as against creditors, but as against the grantor, is good and valid.

Equity will not interfere to relieve the perpetrators of a fraud, but leaves them to their remedy at law. On the part of him who hath committed the fraud, it is irrevocable.

A deed, fraudulently obtained, may be impeached by the representatives of the grantor.

APPEAL from CHANCERY.

The appellee, on the 20th August 1832, exhibited his bill in the court of Chancery, praying for the sale of a tract of land called the " *Two Brothers,*" which had been mortgaged to him on the 19th day of July 1832, by *Richard Stewart,* and *Louisa* his wife, to secure the payment of $281,27. The bill alleged, that the mortgagors derived their title to the premises, from *Joseph Stewart* and *Maria* his wife, and that, although the latter, denied the validity of the deed from them, the complainant affirmed it to be a fair, and operative deed, and effectual to pass the title.

The grantors in both deeds were made parties to the bill, but the death of *Maria,* the wife of *Joseph Stewart* being subsequently suggested, the cause was received against her infant heirs, by a bill of revivor.

*Richard Stewart* and *Louisa* his wife, by their answer, admitted the mortgage from them to the complainant, and that the money thereby secured to be paid was still due; and *Richard* insisted, that the deed from *Joseph* and wife to him, was in consideration of the sum of $780, loaned by him to the latter in 1826, before her intermarriage with *Joseph.*

*Joseph Stewart* in his answer alleged, that the deed from himself and his wife *Maria*, to *Richard Stewart*, was obtained by the fraudulent practices and representations of the grantee. That, at the time of its execution, which was on the 24th of September 1831, the respondent was considerably indebted to one *Thomas Davidson*, and that he, and his wife were induced to apprehend, by the false representations of *Richard Stewart*, that *Davidson*, would take the property in question for his claim, unless they conveyed it to him. That by such a conveyance, the land might be secured to the female grantor and her children, without prejudice to the rights of *Davidson*, to pay whose claim the respondent alleged he had other property amply sufficient, and that in fact, he has since actually paid the larger part of his claim. That this motive, and none other, induced the deed, for which no consideration of any kind was paid by the grantee; and that with the facts connected with its execution, and that the grantors had ever since remained in possession of the property, the complainant had full notice, at and before the date of the mortgage to him. He further alleged, that neither himself nor his wife could read, and that the deed was not read, or explained to them before its execution.

The answer of the infant defendants, the heirs of *Maria Stewart*, relied upon the defence set up by the answer of *Joseph Stewart*.

A commission issued to take testimony under which a number of depositions, and some admissions of the parties were taken and filed. These, it is thought, are sufficiently adverted to, by the learned Judge who delivered the opinion of this court.

*Bland*, Chancellor at September term 1833, decreed a sale of the property, for the payment of the mortgage debt; being of opinion, that the evidence of fraud was not sufficient to sustain the defence, set forth in the answer of *Joseph Stewart*.

From this decree *Joseph Stewart*, and the infant defendants, appealed to the Court of Appeals.

The cause was argued before STEPHEN, ARCHER, DORSEY, and SPENCE, Judges.

DUCKETT, and ALEXANDER, for the appellants contended,

1. That the deed from *Joseph Stewart* and wife, to *Richard* and wife, was fraudulent and void, and the complainant having notice of its invalidity at the date of the mortgage to him, is in no better predicament than his grantors. *2 Ball and Beaty* 319. The case is to be considered, as if the bill had been filed by *Richard Stewart*, claiming to have the benefit of a deed procured by his own fraud. That it is fraudulent, is apparent, from the answer, the evidence, the relation of the parties to each other, the ignorance of the grantors, the retention of possession by them, and the other circumstances of the case. It is marked by all the badges of a fraudulent transaction, and cannot therefore stand, unless supported by extrinsic proof, of which the case is destitute of any, having a tendency to remove the suspicions which surround it. When a deed is thus circumstanced, it must fall, unless sustained by proof *aliunde*. *Wharton vs. May*, 5 *Ves*. 48. *Piddock vs. Brown*, 3 *Pr. Wms*. 288. *Watt vs. Grove*, 2 *Sch. and Lef*. 500.

2. The case is not to be viewed, as if the grantor had filed a bill to vacate his own deed, when the court might feel an indisposition to relieve him. The application comes from the grantee, seeking to have the benefit of an instrument procured by his fraudulent practices, and this not only against *Joseph Stewart*, the husband, but the infant heirs of *Maria* the wife, who at the time of its execution, was a *feme covert*. When the case of the complainant, or him under whom he claims, is a suspicious one, the court will not interfere in his favour. *2 Ball and Beaty* 16, 62. 1 *Mad. Ch. Pr*. 255.

3. That at all events, if the proof of fraud is not sufficient to invalidate the deed, it yet made a case proper to be tried by a jury, and the Chancellor erred in not directing an issue for that purpose. 1 *Bro. P. C*. 140. 6 *Ib*. 364.

PINKNEY for the appellee.

1. The mortgage from *Richard Stewart* to the complainant is not impeached, either in the pleadings or proof, and is therefore, consequently to be treated as above all suspicion, and the complainant as a party seeking to recover a debt confessedly due him.

2. The evidence of fraud in the deed from *Joseph* and wife to *Richard Stewart*, is not sufficient to accomplish the object for which it was offered. From the conflicting nature of the proofs, no satisfactory conclusion can be formed, and in such a case the deed must stand.

3. If *Davidson* the creditor, was seeking to impeach the deed, the court might, under the circumstances, be disposed to listen to his application, but they will not countenance such an effort on the part of the grantors themselves. If a fraud was contemplated, they were parties to it, and the conveyance, though void in reference to the creditor, is valid as to them. *Fonb. Eq.* 140. *Powel Mort.* 21 (*in notes.*) *Bunn vs. Winthrop*, 1 *Johns. Ch. R.* 329.

4. Whether the Chancellor should, or should not send an issue to a court of law, is a matter of discretion with him, and is never directed but upon application.

SPENCE, Judge delivered the opinion of the court.

This cause is brought up to this court, by an appeal from a decree of the Chancellor, and the main question submitted for our decision is, whether the deed from *Joseph Stewart* and wife, to *Richard Stewart*, dated September 24th 1831, is a fraudulent deed, and void against creditors only, or void against the grantors, or either of them.

Let us here settle it as a preliminary point, that *James Iglehart*, the complainant, stands in the shoes, and holds the same relation in this cause, to the extent of his mortgage deed from *Richard Stewart*, as *Richard Stewart* did under the deed from *Joseph Stewart* and wife, and no other. This position we think is clear from his broad admissions of notice spread upon the record, in the following language. — " It is admitted, that

before the execution of the deed, in the proceedings mentioned, from the defendants *Richard Stewart* and wife, to the complainants, the said complainant was informed, that the validity of the deed stated in the proceedings, from the defendants *Joseph Stewart* and his late wife, to the defendant *Richard Stewart,* was denied by the said *Joseph Stewart,* and that counsel had been retained to prosecute a suit, in order to set aside, or defeat it, on the ground stated in the answer in this cause."

We come now to the consideration of the principal question, namely, was the deed from *Joseph Stewart* and wife, to *Richard Stewart* a fraudulent deed? And first, was it fraudulent on the part of *Richard Stewart* the grantee? The decision of this question must be governed entirely by the evidence in the cause. That *Joseph Stewart* remained in possession of the land; that *Richard Stewart* urged *Joseph Stewart's* wife, to convey it to him, to secure it from *Joseph's* creditor *Davidson.* That *Joseph Stewart,* or wife, never owed him a dollar. That he promised to secure the land to *Maria Stewart,* and her children, both before the deed was executed, and afterwards, are facts too clearly established by the evidence in the cause, to admit of a doubt. And that these were means fraudulently employed, to obtain this deed from *Maria,* and designed not only to defraud her, but *Joseph Stewart's* creditors is equally certain. But how stands these grantors in this transaction? That *Joseph Stewart* made this deed with intent to defraud his creditor, *Davidson,* his answer (qualified as it no doubt is,) admits conclusively; and therefore his deed made with such a design, is according to all the authorities, within the statute, 13 *Elizabeth,* and fraudulent and void against creditors; but as against himself, good and valid. No principle is better settled, than that equity will not interpose to relieve the perpetrators of a fraud, but leaves them to their remedy at law—on the part of him, who hath committed the fraud, it is irrevocable. *Fonb. Eq.* 127.

The last branch of the enquiry is, the operation and effect of the deed from *Joseph Stewart,* and wife, upon the hereditary

rights of *Elizabeth Ann Harwood, Lucretia Harwood, Eleanor Stewart*, and *Maria Stewart*, the infant heirs of *Maria Stewart*, the defendant in the original bill, who are made parties to these proceedings, by the complainant's bill of revivor.

The consideration of this part of the case, presents it, in its most interesting aspect. These defendants are infants, and are to be prejudiced, by an act of their ancestor, under whom they claim, performed while she was a *feme covert*.

The proceedings and testimony in this cause, if they do not conclusively establish, so strongly intimate the fact, that the title to the inheritance in the lands mentioned in them, was in *Maria Stewart*, the wife of *Joseph Stewart*, that this conclusion is irresistible. On what other ground shall we account for the allegation in the complainants bill of revivor, "that *Elizabeth Ann Harwood, Lucretia Harwood, Eleanor Stewart*, and *Maria Stewart*, and the heirs at law of said *Maria Stewart*, against whom he is advised, he is entitled to revive said suit, as heirs at law?" Why the anxiety on the part of *Richard Stewart*, as manifested by his practises, threats, and promises, to induce her to execute the deed to him for the land? Surely we can arrive at no other rational conclusion, than the one to which we have come, that this land was hers, and that *Joseph Stewart*, held it only as tenant by the courtesy. Assuming it then as a fact, that the inheritance was in *Maria Stewart*, at the time she executed the deed to *Richard Stewart*, the rights of her heirs must depend upon the fact, whether or not the said *Maria* was a party to the fraud perpetrated by the deed from *Joseph Stewart* and wife to *Richard Stewart*? And we are of opinion, from all the facts and circumstances as developed in the cause, that so far from having been a party to the fraud, that *Richard Stewart* induced her to execute that deed with the deliberate intention of defrauding her. This opinion is fully sustained by the deposition of *Eleanor Watkins*, corroborated as it is, by all the testimony in the cause.

The proceedings in this case shew, that at the date of the deed to *Richard Stewart, Maria Stewart* was the wife of *Joseph*

*Stewart.*  There is no proof in these proceedings to which we give credence, that at that time, *Maria Stewart* had any creditor who could be defrauded by that deed, and if the fee simple of the land was in her, the land was only liable to her husband's creditors during his life, and at his death, all liability would have been extinguished, save, of the creditors of *Maria,* whose debts were contracted before her intermarriage with *Joseph Stewart,* and of such debts there is no proof in the cause.

We are therefore of opinion, that this deed on the part of *Maria Stewart,* was not fraudulent against her creditors, but was obtained from her by the fraudulent practises of *Richard Stewart,* and being so procured and obtained, it was fraudulent and void, against her and her heirs.

Upon the appellants last point, " that an issue should have been sent to a jury," we are of opinion, that this was a case, in which the Chancellor was not bound to send the facts to be tried by a jury, if he could to his own satisfaction, decide himself upon the evidence.

*The decree is therefore reversed, and the bill dismissed with costs in this court, and the court of Chancery, as against all the defendants, except Joseph Stewart and Richard Stewart; and the life estate of Joseph Stewart in the mortgaged premises, decreed to be sold, for the payment of the mortgage debt.*

DECREE REVERSED.