# BENJAMIN ENGEL

## *vs.*

# MICHAEL SCHLOSS.

*Promissory notes: Speedy Judgment Act; denial of signature
in affidavit to plea; puts burden on plaintiff to prove
signature.   Consideration: not to resist
divorce; not good—.*

Where a suit on a promissory note is brought under the
Baltimore Speedy Judgment Act (Section 312 of Chapter 123
of the Acts of 1898), a denial of the defendant's signature in
the affidavit to his plea is a sufficient denial of the note,
although the plea itself contains no such denial.          pp. 76-77

In a suit upon a promissory note the burden of proof is upon
the plaintiff, and a prayer to the effect that the burden is on
the defendant to prove that he did not sign the note is prop-
erly refused.                              pp. 77-78

A plaintiff is not entitled to recover on a promisory note
unless it was signed by the defendant or by someone authorized
to sign for him.                           pp. 78-79

An agreement not to defend a suit for divorce is not a valid
consideration for a contract.              pp. 79-82

Where a proper foundation has been laid, it is competent to
investigate the reliability of the witness by examining witnesses
competent to testify as to his general reputation for truth and
veracity.                                  p. 83

Where evidence is admitted subject to exception, if upon the
conclusion of the case the party objecting does not think the
evidence relevant, he should ask the court to exclude it, if he
wishes to avail himself of the original objection.      pp. 83-84

*Decided February 13th, 1919.*

Appeal from the Court of Common Pleas of Baltimore City. (GORTER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Thomas Charles Williams* and *Eldridge H. Young,* for the appellant.

*William L. Marbury* and *Clarence K. Bowie* (with whom was *Harry B. Wolf* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellant brought suit in the Court of Common Pleas of Baltimore City against the appellee under what is known as the Speedy Judgment Act (sec. 312 of Chapter 123 of the Acts of 1898) on a promissory note, dated the 11th day of December, 1916, for the sum of $5,000, payable to Benjamin Pressler three months after the date thereof, at the defendant's place of business, corner of Paca and Baltimore streets, Baltimore, Maryland, purporting to be signed by the defendant, and endorsed by Pressler to the appellant, Benjamin Engel, on the 2nd day of February, 1917.

The declaration contained the usual common counts and a special count upon said note. Attached to the declaration was the affidavit of the plaintiff required by the Act, and with it was filed the note sued on.

The defendant pleaded (First) that he was never indebted as alleged, and (Second) that he never promised as alleged. To these pleas he made the affidavit required by the statute, in which he stated under

"oath that he knows that the signature or name, 'Michael Schloss,' appearing on the paper or promissory note, filed with the declaration in the above entitled cause and purporting to be the signature of this defendant, was not written by or by the authority of this affiant, the defendant, and that said paper or promissory note was not signed by him or by his authority."

In the trial of the case, which resulted in a verdict for the defendant, and upon which a judgment was entered, thirty-one exceptions were taken to the rulings of the Court upon the evidence, and one to its rulings upon the prayers.

The plaintiff offered five prayers, designated as the "Second," "Third," "Fourth," "Fifth" and "Sixth." Of these the fifth was granted and the others were refused. The defendant offered six prayers. His second was refused and his first, third, fourth, fifth and sixth were granted.

The plaintiff's second prayer asked the Court to instruct the jury "that the burden of proof is on the defendant to establish that the note sued on in this case was not signed by him," while his third prayer asked that the jury be instructed that if "their minds are in a state of equipoise as to whether Michael Schloss signed the note sued on, then the verdict must be for the plaintiff."

As we have said, the Court refused these prayers and granted the defendant's fourth prayer, by which the jury were instructed that, "the burden of proof was upon the plaintiff to establish his case by a preponderance of evidence, and if the minds of the jury are in a state of equipoise, or even balance, then the verdict must be for the defendant."

At the trial the note sued on was produced by the plaintiff, and when shown to Benjamin Pressler, he testified that he saw the defendant, Michael Schloss, sign his name thereto; that it was signed by Schloss at his place of business, corner of Paca and Baltimore streets, on the evening of November 6th, 1916, but at the request of Schloss it was dated Decem-

ber 11th, 1916; that at the time said note was signed and delivered to him, Schloss likewise signed another note, also dated December 11th, 1916, for a like sum, payable to Pressler four months thereafter. This last note was delivered to Aaron Strauss as a pledge for the payment of an indebtedness owing by Pressler to him, and is referred to in the record as the "Strauss Note." It, however, is not involved in this suit. Pressler testified that the note sued on was endorsed to Benjamin Engel, the plaintiff, on February 2nd ,1917, and for which Engel paid him $4,867.50.

The plaintiff rested his case at the conclusion of Pressler's testimony, and Michael Schloss, when called as a witness in his own behalf, denied that he signed the note sued on and also denied the signing of the other note referred to, and further denied that Pressler was in his place of business on the evening of November 6th, 1916, when it was said by Pressler that Schloss had signed the note; and he further testified he not only did not sign the note, but that he did not authorize anyone else to sign it for him.

Snowden Hoff, for eighteen years an employee of the National Bank of Baltimore, for the last seven years as assistant cashier; William O. Pierson, for twelve years an employee of the Union Trust Co. and for the last three years its treasurer; T. Rowland Thomas, president of the National Bank of Baltimore and for twenty-five years connected with banks; John L. Swope, assistant cashier of the Western National Bank for twelve years; Arthur C. Montell, cashier of the First National Bank of Catonsville, all testified that they were familiar with the hand-writing of the defendant, and each of them was shown the note sued on in this case, as well as the "Strauss Note," and each of them testified that in his opinion the name "Michael Schloss," appearing on each of said notes, was not signed by Michael Schloss, the defendant.

In addition to these witnesses, there were two hand-writing experts, who, after comparing the disputed signatures with

the admitted genuine signatures of the defendant, each testified that, in his opinion, Michael Schloss, the defendant, had not signed the name "Michael Schloss" appearing on the disputed notes.

This Court, in *Farmer's Bank* v. *Hunter*, 97 Md. 148, in passing upon a similar local Act for Carroll County, said, speaking through JUDGE BRISCOE, "the effect of this Act is to permit the defendant, in suits brought under the Act, to deny in the affidavit to the plea the genuineness of the signature of any paper purporting to be signed by the defendant, and if this is done, the signature thereto will be put in issue, and not be deemed as admitted for the purpose of the suit.

"The affidavit to the plea in this case, expressly states that the defendant knows that the paper or promissory note, filed with the declaration in said cause, was not signed by him or by his authority, and that the signature or name thereto purporting to be his, was not written by him or by his authority.

"We are of the opinion that this was a sufficient denial of the signature to admit the defense of forgery relied upon by the defendant, and was in accordance with the express terms of the Act."

In the later case of *Horner* v. *Plumley,* reported in the same volume, page 271, this Court in passing upon the Act now before us, speaking through JUDGE PEARCE, said: "When this case was argued the question was an open one, but it has since been held in *The Farmers' Bank* v. *Hunter, ante* p. 148, in a similar case arising under the Local Practice Act of Carroll County, that a denial of defendant's signature, made in the affidavit annexed to the plea, is a sufficient denial to require proof of execution from the plaintiff, though the plea itself contains no denial, and that the procedure provided by that practice act was complete in itself and exclusive of Article 75, section 23, sub-section 108 * * *, without therefore repeating the views expressed in the case above

mentioned, we refer to them as conclusively establishing that the note offered in evidence was not admissible as against Mrs. Plumley, without proof of its execution by her."

In the still later case of *Councilman* v. *Towson Bank,* 103 Md. 469, where the Court was again passing upon the effect of the local statute of Baltimore City, the testimony was conflicting as to whether Mrs. Councilman signed the note mentioned in the declaration, she having sworn positively that she did not, and there being evidence tending to support her, while Mr. Councilman testified she did, and there was some evidence sustaining him. In that case, the Court below granted the prayer of the defendant, Mrs. Councilman, instructing the jury that "the burden is upon the plaintiff to prove that the note offered in evidence, dated March 17th, 1902, was signed by the defendant, and if the minds of the jury are left by the evidence in a state of equipoise on that subject, the verdict must be for the defendant.

CHIEF JUDGE BOYD, who delivered the opinion of this Court in that case, spoke of this prayer as being broad in its concluding part and possibly misleading, but this was owing to the peculiar facts of that case. The claim of the plaintiff there was not confined to the amount of the note, but included a claim of several hundred dollars on an open account, evidence of which was offered under the other counts of the declaration.

JUDGE BOYD said: "It is evident that the defendant's second prayer (the prayer to which we have referred) was supposed by the Court to be intended to apply to the note of March 17th, 1902, alone, and not to a recovery on the common counts for the amount originally loaned. It should have been distinctly so limited, but as we have said, if there was danger of misleading the jury, it would have been to the prejudice of the plaintiff and to the benefit of the defendant, and hence the latter cannot complain."

It is said in 8 C. J., page 998, section 1302, "that the burden of proving the execution of the bill or the note sued

on is on plaintiff at common law. And by statutory enact-
ment, it is now the almost universal rule that plaintiff has
the burden of proving execution of the instrument by defend-
ant, provided the execution is denied by proper plea, as by a
verified denial or plea of *non est factum,* where a plea under
oath is required for such purpose, or by a specific plea where
that is required by statute."

In the case before us, the plaintiff seeks only to recover
upon the note. This is all that is sought to be recovered by
this action and it is clear, we think, that the burden was
upon the plaintiff to prove that the note sued on was signed
by the defendant, and consequently the prayers of the plain-
tiff, asking that the jury be instructed that the burden was
upon the defendant to prove that he did not sign it, were
properly refused.

It is true that the defendant's fourth prayer does not con-
fine the plaintiff's burden to proving the execution of the
note, but requires him to establish his case by preponderance
of evidence, yet under the facts of this case, we do not think
the Court erred in granting this prayer, or at least it com-
mitted no reversible error in so doing. The plaintiff's fourth
prayer, upon the measure of damages, was fully covered by
its fifth prayer which was granted by the Court.

The Court was asked by the plaintiff's sixth prayer to in-
struct the jury "that if they find from the evidence that the
plaintiff purchased the note sued upon for value and before
the same became due and payable, with no knowledge other
than the note furnished on its face, then they must find that
the plaintiff was a *bona fide* holder of said note, and no
knowledge of failure or want of consideration in the giving of
said note (even if the jury so find), subsequently acquired
by him, can affect his title as a *bona fide* holder for value."

The main issue in this case was upon the execution of the
note, that is, was the name "Michael Schloss," appearing
thereto, signed by Michael Schloss, the defendant, or placed
there by his authority. If it was not signed by him or by

his authority no title in the note passed to Engel under the endorsement to him.

By this prayer the jury were not required to find that the note was signed by Schloss or by his authority, but the Court was asked to instruct them, that if they found the facts therein mentioned "they must find that the plaintiff was a *bona fide* holder of said note, and no knowledge of failure or want of consideration in the giving of said note subsequently acquired by him, can affect his title as a *bona fide* holder for value."

Had this prayer been granted the jury would have been told, in effect, that if they found the facts therein mentioned, they must not only find that the plaintiff was a *bona fide* holder of the note, but that he had title therein that would not be affected by such subsequently acquired knowledge of failure or want of consideration. This instruction was properly refused, for had the jury found all the facts mentioned in the prayer, the plaintiff would have held no title or interest in said note enforceable against the defendant, unless he, the defendant, signed it or authorized his name to be placed to said note; the prayer was therefore bad as it did not submit this fact to the finding of the jury.

The Court, in granting the defendant's first prayer, instructed the jury "that if it shall find that Michael Schloss, the defendant, signed the note sued on in this case, and shall further find that the only or any material part of the consideration which the defendant, Michael Schloss, received for signing the note sued on was an agreement or promise by Benjamin Pressler, the payee in said note, not to defend the divorce suit afterward instituted by his wife against him, the said Benjamin Pressler (if they shall find that such divorce suit was subsequently instituted), they shall find for the defendant, unless they further find that the plaintiff, Benjamin Engle, was an innocent purchaser of said note for value before its maturity."

The plaintiff specially excepted to the granting of this prayer because as he alleges "there is no evidence that the divorce proceedings was part of the consideration of said note, and because the uncontradicted evidence in this case is that Benjamin Engle is a *bona fide* holder of the note for value before maturity."

Pressler testified to facts and circumstances that lead him to suspect Schloss of being guilty of improper relations with his wife, Mrs. Pressler. In his testimony Pressler stated that on the evening of October 16th, 1916, he and his wife took supper with Schloss at the Hotel Lexington and while together he told Schloss and Mrs. Pressler that he, later in the evening, was going to Philadelphia and would not be back that night. This he said was to mislead them. After supper they went so far as the Caswell Hotel where Mrs. Pressler took a Madison avenue car for their apartment, on Madison avenue, and in a short time thereafter he and Schloss separated, but after separating he watched Schloss's movements, and saw him take a Madison avenue car going in the same direction as the one previously taken by Mrs. Pressler. Upon observing this, Pressler states that he took a taxi and followed the car taken by Schloss, and when it reached his, Pressler's apartment, the car stopped and Schloss alighted therefrom and entered the apartment. Pressler did not follow him but remained upon the outside until one o'clock waiting for Schloss to come out, at which time he left, but returned in the early morning and about 7:30 saw Schloss come out of his apartment and take a car going down town. Pressler too went down town, but in a short while returned to his apartment where he found his wife, "and upon the dresser he discovered a pair of eye-glasses," and said to his wife, "well, I guess you have had company here, you must have had somebody here." She said: "Well, what of it?" He then said to her, "I think it is high time that you pack up and get," and she left the apartment about half-past nine or ten o'clock. This, as witness said, was the last time that he had anything to do with her.

We should say, however, that Schloss, in his testimony, stated that after eating supper at the Lexington Hotel, they went up Baltimore street to Eutaw and there he separated from Mr. and Mrs. Pressler and went to his office where he remained only a short while and went direct to his home, and that he was not at the apartment of Pressler and wife at all that night. He also testified that he never heard Pressler say that he was going to Philadelphia and would not return that night.

After this, it seems that Pressler went to Messrs. Harley & Wheltle, attorneys-at-law, and left with them the eyeglasses that he claimed to have found upon the dresser in his wife's bed-chamber, and as a result of his interview with Messrs. Harley & Wheltle, they wrote Schloss a letter, which was offered in evidence and marked as Plaintiff's Exhibit No. 4, but this letter, it seems, is not in the record, and thus we are unable to get any information from it as to the character of the claim, if any, made upon Schloss.

We have stated quite fully the facts as to the alleged misconduct of Schloss in connection with the alleged infidelity of the wife, for it seems that it was in consequence, or as a result, of his alleged misconduct that the note, if obtained at all, was obtained from him.

Pressler, in his statement as to what was said and done at the time the notes were signed, testified that Schloss said to him, "I want you to work and help me get Belle her divorce," and it was then arranged that he should see his wife, Mrs. Pressler, the next day and go with her to a lawyer who was to institute divorce proceedings for her. He went to see Mrs. Pressler the next day and was told to go to the office of Mr. Wolf which he did and while there, the summons in the divorce proceeding was served upon him.

Mr. Peter E. Tome, a member of the Baltimore Bar, testified, without objection, that he was told by Pressler in a conversation with him "that Schloss had alienated Pressler's wife's affections, and that when he was about to bring suit against him, the matter had been settled by Schloss giving

two notes for $5,000 apiece, the same to be in full satisfaction of all damages that Pressler had sustained because of the alienation, and in addition, Pressler had agreed that Mrs. Pressler could obtain a divorce from him upon statutory grounds, Mr. Pressler making no defence."

It is only from Pressler that we can gather any information as to the consideration of the alleged note, for Schloss denied having signed the note and testified that he had no knowledge whatever of said note until told of its existence by some one that had been approached by Pressler in an effort to sell to him the note.

Although the above facts, assailing the legality of the consideration of the note, were introduced in evidence, Engel, the plaintiff, never went upon the stand to show that he was an innocent purchaser of the note without knowledge of such facts, and never testified at all until called by the defendant, and then only to the extent of saying that, of the amount given to Pressler for said note, $2,850.00 was borrowed by him from Jacob I. Goldstein.

In our opinion the Court correctly ruled upon the special exception to the prayer, and the prayer in our opinion correctly stated the law applicable to the facts of the case. 8 C. J., page 246, section 385; and page 249, sec. 391, and notes. *Adams* v. *Adams,* 25 Minn. 72; *Sayles* v. *Sayles,* 21 N. H. 312; *Stoutenberg* v. *Lybrand,* 13 Ohio St. 228; *Emerson* v. *Townsend,* 73 Md. 224; *Beard* v. *Beard,* 65 Cal. 354; *Everhart* v. *Puckett,* 73 Ind. 409; *Hamilton* v. *Hamilton,* 89 Ill. 349; 13 *C. J.* 464 and cases therein cited.

We likewise find no error in the Court's ruling upon the defendant's 3rd prayer by which the jury were instructed that unless they found Schloss signed the note sued upon in this case they must find for the defendant.

The defendant's fifth prayer contains a correct statement of law, and should it for any reason be thought objectionable, we fail to discover upon the facts disclosed by the evidence, how it in any way injured the plaintiff.

The first four exceptions are to the admission of a like number of letters written by Lippe, a witness for the plaintiff; the first to the counsel of the defendant and the others to Mrs. Pressler. These letters were admitted in the cross-examination of Lippe and were we think properly admitted for the limited purpose of showing the relation of the parties.

The fifth, sixth, seventh and eighth exceptions were to questions asked Pressler as to the disposition of the money that he said was paid him by Engle for the note. These were proper questions in cross-examination following the disclosures made by him in his examination in chief, but whatever may be said of such questions the answers thereto did in no way harm the plaintiff. The evidence admitted on the 9th exception was likewise properly admitted, and we find no reversible error in the ruling of the Court upon the 10th exception.

The questions to which the 11th and 14th exceptions were taken are the usual questions asked of an impeaching witness, if he knows the general reputation of the witness for truth and veracity in the community in which he lives. The proper foundation had been laid and we can conceive of no ground for objection to such questions.

The Court was also in our opinion, correct in its rulings upon the 13th and 14th exceptions. The exceptions 15 to 24, inclusive, were to certain testimony of one John J. Caplin admitted upon the offer of the defendant to follow it up by showing that not only Goldstein, from whom Engle borrowed a part of the money with which he says he purchased the note from Pressler, knew before the purchase was made that Schloss had repudiated the note, claiming it was a forgery, but that Engle also knew of such fact. Upon the offer so made the Court we think acted properly in admitting said testimony, and if in the opinion of the plaintiff the defendant failed to show that Engle had knowledge of such fact then the plaintiff should have asked the Court to exclude the objectionable testimony from the consideration of the jury

if he wished to avail himself of the objection previously made, and this he did not do. 2 *Poe,* 296A.

The 25th, 26th and 27th exceptions is to similar testimony of Adolph B. Hirschman, which we understand from the record was admitted upon the above stated offer of the defendant and which the plaintiff did not ask to be excluded from the consideration of the jury, but if wrong in this understanding we do not think that the admission of such evidence, if error at all should be regarded as a reversible error, in view of the evidence in the record, admitted without objection. Nor do we find any error in the ruling of the Court upon the 28th exception. The exception is to the question and not to the answer, and while the question is not in all respects as full and complete as it should be, we do not think the Court in permitting it to be asked committed a reversible error and we also find no reversible error in the Court's ruling upon the 29th and 30th exceptions.

And as we find no reversible errors in the rulings of the Court, the judgment will be affirmed.

*Judgment affirmed, with costs.*