## EDWARD LEE HARRISON *v.* ARMA LOUISE HARRISON ET AL.

[No. 98, October Term, 1930.]

*Decided January 16th, 1931.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Thomas F. Molloy* and *Nathan J. Felsenberg,* for the appellant.

*William H. Lawrence,* with whom was *A. Theodore Brady* on the brief, for the appellees.

URNER, J., delivered the opinion of the Court.

The object of this suit in equity is to require the repayment to the plaintiff of a fund of $12,000 paid by him to the Continental Trust Company under an agreement which he alleges to be void as against public policy. From a decree dismissing the bill of complaint, on demurrer, the plaintiff has appealed.

The agreement was executed in July, 1928. It was primarily between the plaintiff and his wife, but appended to it was an acceptance by the trust company of the trust which it created in regard to the fund in controversy. The reasons and considerations for the agreement are stated in the following recitals:

"Whereas, The said Edward Lee Harrison and Arma Louise Harrison, being husband and wife, have heretofore separated; and

"Whereas, The said Arma Louise Harrison charges the said Edward Lee Harrison with abandoning and deserting her without cause and contemplates the filing of a bill of complaint for divorce, alimony *pendente lite,* permanent alimony, costs and counsel fees; and

"Whereas, With a view of defining and settling their respective property rights only, the said Edward Lee Harrison and Arma Louise Harrison desire to enter into such an arrangement as to their said property rights as is hereinafter expressed; and

"Whereas, The said Edward Lee Harrison has agreed to pay unto the said Arma Louise Harrison the sum of nineteen hundred ($1,900.00) dollars, in cash, and the additional sum of twenty-five ($25.00) dollars per week hereafter, and to place with the Continental Trust Company, as trustee, the sum of twelve thousand ($12,-000.00) dollars, in cash, which said sum of twelve thousand ($12,000.00) dollars is to be paid to said Arma Louise Harrison upon the presentation to said the Continental Trust Company of a certified copy of a decree for an absolute divorce (aforesaid payments of twenty-five ($25.00) dollars per week to cease upon the payment by said the Continental Trust Company to said Arma Louise Harrison of said sum of twelve thousand ($12,000.00) dollars) ; and the said Edward Lee Harrison has further agreed to transfer to said Arma Louise Harrison all his right, title, interest and estate in and to all of the household furniture and effects now contained in the home on Boyce Avenue, in Ruxton, the provisions herein contained being in lieu of

all claims that the said Arma Louise Harrison has now or may have hereafter for alimony *pendente lite,* permanent alimony, future maintenance and support and counsel fee; and

"Whereas, The said Arma Louise Harrison has agreed to accept the said sum of nineteen hundred ($1,900.00) dollars, in cash, and the additional sum of twenty-five ($25.00) dollars per week hereafter, and to have the said Edward L. Harrison place with the Continental Trust Company, of Baltimore, as trustee, the sum of twelve thousand ($12,000.00) dollars, in cash, to be paid to said Arma Louise Harrison upon the presentation to said the Continental Trust Company of a certified copy of a decree for an absolute divorce (the aforesaid payments of twenty-five ($25.00) dollars per week are to cease upon the payment by the Continental Trust Company to the said Arma Louise Harrison of said sum of twelve thousand ($12,000.00) dollars); and has further agreed to accept said household furniture and effects in full payment and settlement for all claims of alimony *pendente lite,* permanent alimony, future maintenance and support and counsel fees, except as above provided, and to release the said Edward Lee Harrison and his estate from any further claim and obligation and from any rights, title, interest and demand the said Arma Louise Harrison may have or that may accrue to her in the future against the said Edward Lee Harrison or his estate; and has further agreed to transfer to the said Edward Lee Harrison all her right, title, interest and estate in and to the property now owned by them on Boyce Avenue, in Ruxton."

The contractual provisions of the agreement were in accordance with the terms which the recitals indicated, with additional covenants for the release by each spouse of any marital interest in the estate of which the other might then or thereafter be possessed. The terms of the trust as to the $12,000 fund are thus stated in the agreement:

"And it is further understood and agreed that in the event that the said Edward Lee Harrison should die at any time before the said Arma Louise Harrison shall have obtained a decree for an absolute divorce, that then upon the death of said Edward Lee Harrison the said the Continental Trust Company shall thereupon pay to the said Arma Louise Harrison the aforesaid sum of twelve thousand ($12,000.00) dollars, in cash; and in the event that the said Arma Louise Harrison shall die before having obtained a decree for an absolute divorce, that then upon the death of the said Arma Louise Harrison the said the Continental Trust Company shall pay to the estate of said Arma Louise Harrison the sum of seventy-five hundred ($7,500.00) dollars, in cash, and shall return to said Edward Lee Harrison, his heirs, representatives or assigns, the sum of forty-five hundred ($4,500.00) dollars.

"It is further understood and agreed that the said the Continental Trust Company, as trustee, aforesaid, is hereby authorized to retain the aforesaid sum of twelve thousand ($12,000.00) dollars, and manage the same as a trust fund, with full power to invest and re-invest the same in any stocks, bonds and other property, real or personal, and to pay to the said Arma Louise Harrison, upon delivery to it of a certified copy of a decree of absolute divorce, the sum of twelve thousand ($12,000.00) dollars, and to pay any excess or increment, including all earnings from the said investment, to the said Edward Lee Harrison."

It is alleged in the bill of complaint that the marriage of the plaintiff and his wife occurred in 1920, and that they have had no children; that during the spring of 1928 there arose between them "some differences which, in retrospect, were not especially serious in their nature, but at the time, by reason of unfounded and intemperate criminations and recriminations, assumed in the minds of the disputants, an exaggerated importance, and in the heat of temper and passion, they reached the conclusion that it was desirable that

they should separate and live apart for the time being"; that they entered into the agreement, to which we have referred, on July 15th, 1928; that, in pursuance of it, the plaintiff deposited $12,000 with the Continental Trust Company, which fund is still in its possession; that the plaintiff, at the time of the execution of the agreement, was "laboring under great mental and nervous strain, due not only to the temporary disagreement with his wife," "but also by reason of certain business difficulties that had arisen at or about the same time"; that the plaintiff is now advised and believes that the agreement is without consideration and null and void, as being against public policy, and should be disaffirmed and rescinded; and that the plaintiff has called upon the Continental Trust Company to return to him the $12,000 deposited with it under the agreement, but it has refused to comply with the demand. The specific relief prayed in the bill is that the agreement be set aside and declared null and void, and that the trust company be ordered to repay to the plaintiff the fund held by it under the trust alleged to be invalid.

The trust company filed an answer stating that it has no knowledge of the matters averred in the bill of complaint except the execution and the terms of the agreement under which it holds the fund of $12,000 in trust; that it has been performing the duties imposed upon it by the agreement and refused to return the fund to the plaintiff unless so ordered by a court of competent jurisdiction; and that, being a stakeholder of the fund, and the husband and wife who are exclusively interested in its payment being parties to this proceeding, the trust company does not consider it necessary or desirable to take any position as to the validity of the agreement, and therefore submits to such decree as may be passed in the case.

It was upon the wife's demurrer that the bill was dismissed. The demurrer denied the sufficiency of the bill to entitle the plaintiff to any relief in equity, and asserted that the agreement in question is not contrary to public policy, but is valid and binding and based upon a legal consideration.

In order to sustain the right of rescission asserted by the plaintiff, it is necessary to determine not only that the agreement is void as tending to promote a divorce, but that the plaintiff can successfully challenge, on that ground, in a court of equity, the validity of his own contract.

While the agreement undoubtedly contemplated a divorce, it did not depend for its efficacy upon the procurement of a decree to that end. It does not appear that there was any existing cause for an absolute divorce. The separation of the parties had continued for not more than a few months, and resulted, as the bill avers, from differences which were not "especially serious in their nature." In view of the limited duration of the abandonment charged by the wife, as stated in the agreement, only a partial divorce could be procured by her under any law of which this record enables us to take cognizance. Apparently no suit for divorce of any kind from the plaintiff has been instituted. Consistently with the specific terms of the agreement, the defendant wife could refrain perpetually from suing for a dissolution of the marriage. The stipulated weekly payments amount to much more than the probable income from the $12,000 fund if it should come under her control. The predecease of her husband would give her the same right to the fund, under the contract, as if she procured the absolute divorce, which was the alternative condition to her receiving it in full. If she should be survived by her husband, without the intervention of such a decree, $7,500 of the fund would be payable to her estate and be subject to her testamentary disposition. The considerations, permitted by the agreement, which might legitimately influence her against suing for a divorce, are substantially stronger than those tending to induce such action.

It is not legally or equitably feasible to treat the provision for the $12,000 deposit independently of the other terms and conditions of the contract. The trust as to that fund was created as a part of the consideration for the wife's conveyance of her interest, as a tenant by the entirety, in the real

384

estate to which the agreement refers, and the release of all her marital rights in her husband's property.

To the extent to which the agreement might be susceptible of interpretation as an encouragement to a divorce, it is subject to the court's disapproval. *Engel v. Schloss,* 134 Md. 72, 106 A. 169; *Kremelberg v. Kremelberg,* 52 Md. 553, 563. But that is not a reason for which the plaintiff has a right to assail the contract in a court of equity. In any wrongful purpose which the agreement may be regarded as promoting he was actively and equally implicated. In denouncing it as against public policy he condemns his own act of participation. Being equally involved in the wrong which he alleges, he is not entitled to equitable relief from its consequences. That conclusion is required by a just principle, which this court has repeatedly applied, and which is thus stated in 10 R. C. L. 353: "It is a principle of equity that where a contract is illegal, immoral, or against public policy, or has been entered into through fraud, or to accomplish any fraudulent purpose, a court of equity will not, at the suit of one of the parties, a *particeps doli,* while the agreement is still executory, either compel its execution or decree its cancellation, nor, after it has been executed, set it aside, and thus restore the plaintiff to the property or other interest which he has fraudulently or illegally transferred. Equity will leave such parties exactly in the position in which they have placed themselves, refusing all affirmative aid to any of the participants." Among the numerous cases cited to that statement are *Baxter v. Deneen,* 98 Md. 181, 57 A. 601; *Stewart v. Iglehart,* 7 G. & J. 132; and *Freeman v. Sedwick,* 6 Gill, 28. The same principle also governed the decisions in *Roman v. Mali,* 42 Md. 513, and *Cushwa v. Cushwa,* 5 Md. 44, and is stated in *Snyder v. Snyder,* 51 Md. 80; *Brown v. Reilly,* 72 Md. 489, 20 A. 239; *Schuman v. Peddicord,* 50 Md. 560; *and Lord v. Smith,* 109 Md. 42, 50, 71 A. 430.

According to the bill of complaint, only a temporary separation of the plaintiff and his wife was originally intended.

If, as the bill implies, their differences were not sufficiently serious to cause a permanent breach, there is no apparent reason why a restoration of their normal relations could not be accomplished. Suitable efforts to that end would tend to gratify the public policy which the agreement in controversy is said to have offended, and might serve to solve the problem with which this suit is concerned.

A reversal of the decree is requested in order that the plaintiff may have an opportunity, not provided by the decree, to amend the bill of complaint. As the want of equity in the plaintiff's case could not be supplied by amendment, in view of the essential and conceded facts, the unqualified dismissal of the bill was justified.

*Decree affirmed, with costs.*